UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LANEE J. THORNSLEY,** | ) | CASE NO. 5:24CV1145 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| **COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY,** | ) | |
| Defendant. | ) | |

<u>**CHRISTOPHER A. BOYKO, J.**</u>:

This matter comes before the Court on Plaintiff's Objections (ECF DKT #13) to the Magistrate Judge's Report and Recommendation (ECF DKT #12) which recommended the Court affirm the decision to deny Plaintiff's claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). For the following reasons, the Court ADOPTS the Report and Recommendation and AFFIRMS the Commissioner's decision.

**I. BACKGROUND**

The following is a procedural synopsis of Plaintiff's claims. The Magistrate Judge's Report and Recommendation provides a more complete and detailed discussion of the facts. For a complete overview of Plaintiff's medical history, see the Magistrate Judge's Report and Recommendation which refers to the original Complaint and incorporates all documents in relation to Plaintiff's claims.

The current matter involves Plaintiff's claim for DIB on October 19, 2021, alleging a disability onset date of January 1, 2019, and for SSI on February 1, 2022, alleging the same disability onset date. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff

requested a hearing before an administrative law judge ("ALJ"), which was granted. The ALJ held a hearing on June 27, 2023. Both Plaintiff and a neutral vocational expert testified at the hearing. On August 15, 2023, the ALJ concluded that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.

On July 9, 2024, Plaintiff timely filed the instant Complaint challenging the Commissioner's final decision. (ECF DKT #1). On June 18, 2025, the Magistrate Judge issued the Report and Recommendation. (ECF DKT #12). On July 2, 2025, Plaintiff timely objected to the Report and Recommendation. (ECF DKT #13). Defendant filed a one-paragraph response shortly thereafter. (ECF DKT #15).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence; that the ALJ failed to properly evaluate the medical opinion of her treating mental health provider, APRN (Advanced Practice Registered Nurse) Katlyn Dailey according to Social Security regulations; and that the ALJ failed to describe the reasons he found Dailey's opinion unpersuasive in terms of supportability and consistency.

## II. LAW AND ANALYSIS

**Standard of Review**

Review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636(b), which requires a de novo decision as to those portions of the report and recommendation to which objection is made. "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327

F. Supp. 2d 743, 747 (E.D. Mich. 2004); see also Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to[]"); Local Rule 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections[]").

Judicial review is limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the decision. 42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010). "Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)).

A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Nor need the reviewing court necessarily agree with the Commissioner's determination in order to affirm it. "Even if [the] Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence." *Kyle*, 609 F.3d at 854-55. This is true even if substantial evidence also supports the claimant's position. See *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

Even when there is substantial evidence however, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Likewise, a court "cannot uphold an ALJ's decision, even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011).

Since March 27, 2017, the Social Security Administration regulations have provided that the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [] medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R.

§ 404.1520c(c)(2).

The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id*.

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act (20 C.F.R. 404.1512 and 416.912).

"Disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

The Social Security Administration bears a limited burden of proof, known as the burden of going forward. The Social Security Administration must support a finding that a claimant is able to perform other work with evidence of such work, i.e., with evidence showing that jobs exist in significant numbers in the national economy that an individual of the claimant's age, education, work experience, and residual functional capacity could perform (20 C.F.R. 404.1512, 404.1560(c), 416.912, and 416.960(c)).

A claimant's "residual functional capacity" is her ability to perform physical and mental work activities on a regular and ongoing full-time basis, considering the combined and cumulative effects of all medically determinable impairments, as reasonably established by the evidence (SSR 96-8p).

**Relevant Medical Evidence**

In April of 2017, Plaintiff began treatment for depression with her primary care physician, Denise K. Miller, D.O., and continued to see Dr. Miller regularly for her mental and physical health.  Plaintiff also engaged in counseling and began seeing a psychiatrist.

In a January 2019 visit with Dr. Miller, Plaintiff reported issues with grief, loss, depression, anxiety and alcohol use.  Although these issues subsided in July and Plaintiff said she was "doing well" and had "no concerns or complaints," she expressed the need for a refill of her Xanax because she had "anxiety at night" and could not sleep.  At a February 17, 2020 appointment with Dr. Miller, Plaintiff admitted taking extra Xanax, being unable to sleep, going into "full panic mode" and "eating a lot."  Dr. Miller diagnosed Plaintiff with a severe episode of recurrent Major Depressive Disorder without psychotic features.

At her initial medication management evaluation with a psychiatrist, George Moses, D.O., on February 26, 2020, Plaintiff reported that her depression was "overwhelming;" that her energy was "limited" except during her "manic periods [that] last for a day at most;" that she had a "poor self-image and [therefore did] not want to socialize;" that her "OCD [was] under control;" but that she was unemployed and living with her father, as she was unable to work – and had to take Xanax at night – "due to anxiety."  Dr. Moses diagnosed Plaintiff with depressive, panic, and obsessive-compulsive disorders, but documented Plaintiff's prognosis as "good" with a changed medication regimen.  He also "cautioned her about taking [Xanax] at night due to [her] probable sleep apnea."  In September of 2020, Dr. Moses found that Plaintiff had regular speech, clear and linear thought processes, intact judgment, no impairment in memory and appropriate mood and affect.  Plaintiff was oriented to place and time and her

attention span and concentration were within normal limits.

At a February 8, 2021 appointment, Dr. Miller noted that Plaintiff's mental impairments were currently controlled; however, Plaintiff reported she was scared to get a job and wanted to seek disability. Dr. Miller advised that if she is struggling with her anxiety, she needed to discuss [it] with her psychiatrist, Dr. Moses, to have him complete the paperwork for disability.

Following a February 10, 2021 telehealth appointment with Dr. Moses, the case manager informed Plaintiff that Dr. Moses declined to write a letter regarding disability because she had "not been compliant with meeting with [her] counselor and/or keeping appointments regularly."

On September 27, 2021, Plaintiff met with Katlyn Dailey, APRN for a psychiatric evaluation. Plaintiff was diagnosed with borderline personality disorder and ongoing Major Depressive Disorder. Dailey continued her prescribed medications and added medication as necessary. At a follow-up on October 19, 2021, Plaintiff denied any medication side effects and reported good sleep, increased appetite and improved anxiety and depression symptoms. On January 11, 2022, Plaintiff told Dailey about "night anxiety" but fewer panic attacks. Similarly, on February 8, 2022, Plaintiff reported her sleep was "fair" and the panic attacks continued to improve. On March 8, 2022, Plaintiff told Dailey that her depression was "manageable." On May 3, 2022, Dailey adjusted Plaintiff's medication when Plaintiff reported poor sleep and increased anxiety and depression. Plaintiff continued to assert that she remained "incapable of working … due to her struggles with her mental health."

On May 26, 2022, Plaintiff saw Stephen Billman, Psy.D. for a consultative psychological evaluation at the request of the state agency. Plaintiff reported "sleeping a lot," some crying spells, low energy, easy fatigue, memory deficits, and difficulties with crowds and relationships;

she said that she had "a preference not to leave home," and that she spent a typical day "cleaning the house" or "help[ing] with other chores in the home." Plaintiff stated that she drives, manages her own finances and has a few close friends and a good relationship with her brother. Dr. Billman described Plaintiff as having a "somewhat stiff manner, consistent with anxiety" and appearing "depressed with a blunted affect." Yet, Plaintiff "remained cooperative" and "demonstrated intact memory and attention/concentration." Dr. Billman diagnosed Plaintiff with post-traumatic stress disorder, associated panic attacks, borderline personality disorder and persistent depressive disorder. Dr. Billman opined that Plaintiff has a limited ability "to perform even simple tasks for long periods of time in the workplace," and that she has "significant limitations" in her ability to tolerate the pressure of ordinary day-to-day work.

On June 10, 2022, a state agency consultant, Lisa Foulk, Psy.D., assessed Plaintiff and found that she had no limitations in understanding, remembering or applying information and no limitations in interacting with others. Foulk did find moderate limitations in concentrating, persisting or maintaining pace and in adapting or managing herself. According to Foulk, Plaintiff had the mental capacity to complete moderately complex tasks in a routine work environment without high production or pace quotas and to adapt to changes explained in advance. Another state agency consultant, Irma Johnston, Psy.D., affirmed Foulk's findings but added that Plaintiff could adapt to infrequent changes.

On January 31, 2023, APRN Dailey completed a checkbox-style medical opinion form regarding Plaintiff's mental ability to work. Dailey opined that Plaintiff has no limitations in: Remembering work-related procedures; understanding/remembering/ carrying out very short and simple instructions; making simple work-related decisions; maintaining attention for two hours at

a time; performing tasks at a consistent pace; sustaining an ordinary routine without supervision; working around others without being unduly distracted; appropriately accepting instructions/correction/criticism; getting along with others in the workplace; and responding appropriately to changes in workplace routine.  Dailey further advised, however, that Plaintiff would be absent from work "about four days per month," and is seriously limited in her ability to:  Maintain regular attendance; complete a normal day/week; deal with normal work stress; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; and interact appropriately with the general public.

**Administrative Hearing**

On June 27, 2023, Plaintiff testified at a hearing before the ALJ.  (Transcript, ECF DKT # 6 at 40-70).  Summarizing:  Plaintiff continues to live with her brother, but she is home alone during the day while he is at work.  Plaintiff and her brother have a dog, but she does not help care for it.  She struggles to maintain day-to-day activities such as grooming, dressing and feeding herself.  Plaintiff cannot work because even her part-time job at McDonald's left her "hiding in the bathroom crying."  When asked by the ALJ to explain what prevented her from working, Plaintiff said her life was "terrible," and she had "borderline personality disorder" which caused her to have fluctuating symptoms.  Counseling and the multiple medications she has attempted over time have provided no benefit.  Plaintiff takes Xanax at least once or twice daily.  As a result, Plaintiff spends a typical day in bed; she cannot leave the house, and thus cannot drive or grocery shop; she lacks the attention/concentration to read or to watch an entire movie, and she doesn't socialize with anyone except her family.

Following Plaintiff's testimony, the Vocational Expert (VE) Kenneth Jones testified.  In

answer to the ALJ's hypothetical question describing an individual with Plaintiff's age, education, work experience and functional limitations, the VE stated that Plaintiff would be able to perform the requirements of the following representative light unskilled occupations: Marker, 64,000 jobs nationally; Garment Sorter, 22,000 jobs nationally; and Routing Clerk, 88,000 jobs nationally.

**ALJ Decision**

On August 15, 2023, the ALJ determined that the marked level of dysfunction identified by APRN Dailey was neither fully supported nor persuasive. While Plaintiff's medically determinable impairments could reasonably be expected to produce the types of symptoms alleged, the intensity, persistence and disabling effects of those symptoms as asserted by APRN Dailey and Dr. Billman, lacked objective and overall record support.

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2023.

2. The claimant has not engaged in substantial gainful activity since January 1, 2019, the alleged onset date (20 C.F.R. 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: Morbid obesity; lumbar degenerative disc disease, with mild retrolisthesis at L5-S1 and intermittent sciatica; and affective dysfunction variously diagnosed to include depressive, dysthymic, premenstrual dysphoric, bipolar, anxiety, panic, obsessive-compulsive, borderline personality, and post traumatic stress disorders, with a history of benzodiazepine dependence (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or a combination of impairments that meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), within the following parameters: She can never climb ladders, ropes, or scaffolds, she must avoid all exposure to unprotected heights, and she can no more than occasionally climb ramps/stairs, stoop, crouch, and crawl. The claimant can perform a wide variety of simple and complex tasks, but she cannot perform any tasks requiring a high production rate pace (for example, assembly line work). She is limited to a non-public routine work setting where changes are no more than occasional, and she is limited to occasional and "superficial" interaction with supervisors and coworkers, with "superficial" defined to mean not involving sales, arbitration, negotiation, conflict resolution, confrontation, group/tandem/collaborative tasks, or the management/direction/persuasion of others.

6. The claimant has no past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born on January 6, 1995. Therefore, she was 23 years old and defined as a younger individual on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. The claimant's educational level is defined as high school or above (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past

  relevant work (20 C.F.R. 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2019, through the date of this decision, August 15, 2023 (20 C.F.R. 404.1520(g) and 416.920(g)).

**<u>Analysis of Objections</u>**

  Plaintiff argues that the ALJ's determination that she is not disabled should be rejected. Plaintiff asserts that the ALJ failed to properly evaluate APRN Dailey's opinion of her mental health limitations under C.F.R. 404.1520c, and also failed to consider how the mandatory factors of supportability and consistency affected the overall persuasiveness of Dailey's opined restrictions.  Plaintiff criticizes the ALJ for unduly focusing on the single session between Plaintiff and Dailey in February of 2023.

  Reviewing the record as a whole and considering the entirety of the ALJ's decision, the Court finds that Plaintiff's criticisms are not well-taken. The ALJ appropriately addressed the supportability and consistency of Dailey's assessments of Plaintiff's mental health and found they were not persuasive.

  In an October 2021 follow-up to Dailey's initial diagnoses of depressive disorder and borderline personality disorder, the ALJ observed that Dailey's treatment notes indicated Plaintiff's "anxiety [was] better" and her depression and sleep were "good."  In the early part of 2022, Plaintiff reported to Dailey that her sleep continued to improve, her panic attacks lessened

and her depression was manageable.  (ALJ Decision, ECF DKT #6 at 26).  Yet, Plaintiff self-reported that she remained "incapable of working … due to her struggles with her mental health."

Upon evaluation of Dr. Billman's and Dailey's assessments, the ALJ determined that other clinical findings and the record as a whole established that while Plaintiff has some limitations in her interactive, attentive, and adaptive functioning, those limitations do not result in marked, extreme, or work-preclusive limitations in Plaintiff's ability to sustain simple tasks (such as housecleaning all day), or to tolerate (within [certain] parameters) ordinary day-to-day work.  (ALJ Decision, ECF DKT #6 at 27).

Moreover, the ALJ commented that neither the limitation nor marked level of dysfunction opined by APRN Dailey on January 31, 2023 was fully supported.  This was particularly true when Dailey recorded Plaintiff's report in February of 2023 that the adjustment of her medications "helped with anxiety," that her "intrusive thoughts [had] improved," and that her depression was "fair."  (ALJ Decision, ECF DKT #6 at 28).  The ALJ found these reduced and improved symptoms were significant since they were so close in time to Dailey's January 31, 2023 seriously negative prognosis of Plaintiff's mental inability to work.

The record established no clinical or opinion evidence of limitation in Plaintiff's abilities to learn, recall, and use information, or to use reason and judgment to make work-related decisions. (ALJ Decision, ECF DKT #6 at 28).  Plaintiff's "routinely intact clinical attention and concentration," "her acknowledged ability to regularly complete household tasks" and the record as a whole fail to support a finding of marked, extreme, or work-preclusive limitations in the areas of concentration, persistence and pace.  (ALJ Decision, ECF DKT #6 at 29).  Both Billman's and Dailey's mental disability opinions were  based on the Plaintiff's own stated

inability to sustain work. Objective testing and evidence did not support the finding that Plaintiff's deficits in stress- and behavior-management were marked, extreme, or work-preclusive. (ALJ Decision, ECF DKT #6 at 29).

The ALJ considered all the evidence, evaluated all of Plaintiff's alleged symptoms and concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to produce the types of symptoms alleged, the asserted intensity, persistence, and disabling effects of those symptoms lack[ed] objective and overall record support." (ALJ Decision, ECF DKT #6 at 30). There was no clinical evidence in the entirety of the record, including Dailey's findings, of work-preclusive psychological symptomology. (ALJ Decision, ECF DKT #6 at 30-31).

The Court need not agree with the ALJ's decision in order to uphold it. The Court must only find that the ALJ used the correct legal standards and that there is substantial evidence in the record to sustain the decision.

Although Plaintiff confines her Objections (ECF DKT #13) to the supportability factor, the Court holds that the ALJ also specifically determined that Dailey's opinion was inconsistent with that of Dr. Miller, Dr. Moses and the State agency psychological consultants. None found the same severe, work-preclusive limitations that Dailey ultimately opined.

### III. CONCLUSION

Accepting Plaintiff's subjective reporting of symptoms and personal history, the Court holds that the ALJ clearly articulated why the objective evidence and record as a whole support moderate limitations as opposed to the severe work limitations opined by Plaintiff's treating mental health provider, APRN Katlyn Dailey. The Court further determines that the ALJ

committed no legal error by considering Dailey's opinions unpersuasive.

The Magistrate Judge did not err in finding that the ALJ applied proper legal standards and reached a decision supported by substantial evidence. The ALJ properly evaluated APRN Dailey's opinions of Plaintiff's mental limitations using the factors of supportability and consistency and found them unpersuasive.

Therefore, Plaintiff's Objections (ECF DKT #13) are OVERRULED; the Magistrate Judge's Report and Recommendation (ECF DKT #12) is ADOPTED; and the Commissioner's final determination denying Plaintiff's claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") is AFFIRMED.

**IT IS SO ORDERED.**

**DATE: August 5, 2025**

      s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**UNITED STATES DISTRICT JUDGE**